So, both counsel are with us virtually, and Mr. Sheehan and Ms. Turner, you can both hear us okay? Yes, Your Honor. I can, Your Honor. All right, Mr. Sheehan, whenever you're ready. Thank you, and I'd like to reserve three minutes, please. What happened here is my clients needed to borrow some money to take out a current loan in place. We entered into a contract with the defendant. The contract was on the defendant drafted it. It was 20 pages long, and it said, although you're preliminary approved, specifically, I'll read the exact language. It says, based on a preliminary analysis of the information supplied to Arbor, we have approved your request to process a mortgage loan pursuant to this application. Approval of the mortgage loan will be subject to a complete underwriting review, site visit, and the lender's loan committee approval. Mr. Sheehan, can I ask you, I think the parties agree that, and your adversary will correct me if I'm wrong, but I think the parties agree that what was supposed to be done pursuant to the application was not done. That is, instead of the loan officer saying, I don't trust this borrower, I'm not even submitting this to the committee, it should have been submitted to the committee. And then the question is, under your view, did the committee have to approve it with a loan officer telling them, I don't think this is a trustworthy buyer because they concealed this event from us? Your Honor, quite frankly, that's not the issue that's here today. The lower court already ruled that they were liable and that they breached their obligation. The lower court already said that if it had been sent to the loan committee, that it would have been approved. In fact, the other side wrote in their brief, it says, SC-2006 writes at length about Indusia, that its application was progressing and seemed likely to close. This is uncontested. The facts are such that that guy who said about the trust admitted now that if he'd just known the simple fact or looked into it, that he would have approved the loan. I mean, what he said, as I understand it, counsel, was that if it had been disclosed, it wouldn't have been a problem. That the problem wasn't the workout event. The problem was the double non-disclosure, right? Well, not exactly, Your Honor. He said that he generally accepted the underwriting advice from the underwriter on the project. Do you generally accept the underwriter's voice? Yes. Well, I'm reading his deposition transcript. He says it's a typical and reasonable explanation. So the answer to my question is nothing would cause you any concern except for not disclosing it. And then later, or in the same depot, so your client didn't disclose to the lender that there were workout events, but they had two opportunities to disclose the situation and they failed to do so. It seems to me pretty clear that his concern was not with the workout event, but the failure to disclose it. Why is that a breach of contract? Where does the contract say there's an obligation to fund? Well, again, the lower court already found liability, and they didn't contest that. You know, when you say that, I kind of see it as two separate contracts. It's almost like the bank had to do certain things under the application, and it didn't have to do other things. And then if they entered into a loan agreement, that would be a new contract. That wouldn't be this contract. So I interpreted the lower court as saying, yes, there was a breach of what was supposed to be done in the application process because this never got submitted to the committee. That's the breach. Well, what the lower court found that the, first of all, we only failed to disclose it originally when we did the loan application. A trustee for the trust, who had no knowledge of the workout eight years ago, checked a box wrongly. But the lower court found that that was not a material misrepresentation. Economically, it wasn't. I think we all agree on that. But as a matter of trust, maybe it was. Well, except that he specifically testified, if you look at his deposition, that he understands why my client would be upset from the standpoint that all he had, first of all, they knew about the workout in March. And they didn't cancel until one day before our other loan was due in May 5th. So the lower court said, first of all, the workout was a non-issue. So it was wrongful for him to stop the loan application process. Second of all, they knew about it back in March. So therefore, it would be improper to do it on May 5th. Third of all, on May the 3rd, they came to us and said, if you add another person, a guarantor, we will, in fact, give you this loan. And then he didn't do it. His own testimony, I said, knowing the facts now that you guys knew about this in March, knowing the fact that this was not anything to worry about whatsoever, do you understand my client's frustration? And he said, absolutely, I do. Well, I understand your client's frustration, too. Your client didn't get the loan. Yeah. I don't understand how the district judge's findings of fact put you in as good a position as you're arguing that they do. He's saying they should have submitted it to the committee. The district judge found no damages because the committee wouldn't have made the loan anyway, or at least you can't prove that it would have. So I don't really see why those findings are so good for you. And as far as whether the evidence supported those findings, the trust issue looks pretty genuine. I mean, it can often be the case that a loan would be made despite something negative in the past, especially after the 2008 financial collapse, but it won't be made if you don't trust the borrower. There's just nothing mysterious about it. Again, Your Honors, the evidence is crystal clear that the loan committee would have done this. When you say done it, that's a vague phrasing. I don't see where the evidence is crystal clear that they would have made the loan. The evidence was crystal clear that a prior workout would not by itself kill the loan. That's all. Well, again, I think we're getting a far field of really what the issue is here, whether the damages. But let me cover that point because you guys have brought it up, which is the testimony and the facts were all that the underwriter who did the loan, he made us get the appraisal. He said the appraisal came in. He made us do a property inspection, submit all the paperwork, everything else. The underwriter issued a positive report to the loan committee. That's uncontested. Their own agreement. And so the testimony was, it's on my page six. It says, because if it was favorable, the underwriter's report to the committee, you probably would have issued the loan. Fair enough? But, counsel, the district court made an explicit finding or made a finding, and I'm quoting at ER 186, thus under the explicit terms of the party's agreement, Arbor was obligated to finish processing SC-2006's loan application,  and the district court also, sort of as an exclamation point, says nobody has argued that parole varies the terms of the contract. That's in footnote 38. Why isn't that the end of your we should have got the loan argument, where the district court made what seems to me to be a perfectly reasonable and compelled finding of the contract. There was no obligation to fund. I think we've got a freeze on the video. Mr. Sheehan, are you there? Are you guys, can you hear me? We can now. You were frozen for a minute. Help me on a detail here. I mixed it up in the last argument because I was confusing something with this one. It looks to me quite clear that the parties chose for New York law to apply. Is there any dispute about that? There's a choice of law that says New York, but quite frankly the law is the same in New York and Nevada, and so there really isn't any difference. But to get back to the other point, again, if you read the deposition transcript that I put in my brief, page 6, again, it's undisputed that if this had gone to committee, it would have been approved. They've admitted that in their brief, and it says the testimony is that the senior underwriter gave it a positive review, and Mr. Casey admitted that he gave it a positive review, that the loan would have been funded. That's one of the arguments that we have here today is to put us back in the same position as if we had been but for the breach since we know it's undisputed that the loan would have been funded if they had just simply finished the process that we're entitled to that. But going back to the first argument, which is what the district court did is they said, okay, yes, they breached their agreement to properly process the loan. Your property complied with every single loan requirement that they had. They had 40 loan requirements. We complied with every single one. We would have been approved by the loan committee if it had been gone to the loan committee. Brad Casey admits this. He said the senior underwriter gave it a positive review. Did he make a finding? I thought he expressly made a finding that none of that meant that the loan necessarily would have been made. Well, again, I'll read you the deposition testimony. Why don't you read me the finding of fact? The finding of fact doesn't include that one thing. You're not saying the findings of fact are clearly erroneous, so the findings of fact do control, don't they? Well, again, we're not contesting the findings of fact. Again, their own brief says SC-2006 writes at length about Indica that its application was processing and seemed likely to close. This is all uncontested. The only issue that the district court had was, look, I agree that they breached and that you would have been funded if they properly processed this thing, but there was no obligation on their part to actually fund. Your damages, they breached, but your damages, you can't show the damages about the funding. But it makes no sense that we could sign an exclusive loan application. They made this exclusive. Exclusive loan application, submit paperwork for three months. They knew full well that our loan was coming due from a current loan, and we meet every single criteria for the loan. Again, if you look at my brief, it's uncontested. We met every single criteria for the loan. The only reason that the gentleman, and he said now it was a mistake, that if he had simply looked at the workout event from way back when, and, of course, if one trustee who has no knowledge, he's a lawyer for the thing, has no knowledge of the workout about eight years earlier, but, again, he knew about it in March. So they had no valid reason not to issue the loan. But the court says, listen, there's not an express term in this contract that says that they had to fund the loan, just that they had to process it. But that would lead to an absurd result. The real question for this court today on issue number one is, is it clear intent of the parties that if my client met all of the loan terms, met all the criteria and complied with what the document said, which is that the underwriting review, the site visit, and all the rest were there, that they had an obligation to not only process the loan, but actually fund the loan if we met all the criteria. And it's undisputed we did. So that's number one and just the basic reason I feel we should win. Number two, though, is the equitable estoppel. You can't know about this trustee accidentally marking the wrong box back in March 17th and continue until May 5th. We could have gotten another loan from somebody else. We had to pay a huge default damages. And by the way, the damages are not – the amount of the damages are not in controversy. Everybody admits to those, and I've got those in my brief. The only question is, are you entitled to any damages? So did you want to reserve the rest of your time? You're down to about two minutes. That's up to you. You said you wanted to reserve three. Yes, I'll reserve three. Thank you. All right. Ms. Turner, whenever you're ready. Thank you. We have a commercial loan application. We don't have a loan agreement. We don't have a loan agreement to fund. And the entire premise of Mr. Sheehan's position, his arguments, both to the district court and here, is as if there was an obligation to fund. That ignores the written contract itself. It also ignores New York law. I did extensively the Citibank versus United subcontractors in New York case, where it held that the case holding was that a contract that allows a bank to withhold consent without restriction on the bank's rights. So, counsel, is it so the evidence was that the loan wasn't funded because of nondisclosure, right? Right. Okay. Is it your view that there would have been no claim at all if what Mr. Casey had testified to is, I met the principles of the entity, and I didn't like the color of their ties. So because I didn't like the colors of the ties that they were wearing, I had the bank decline the loan. Is it your position that that also would not have been a contractual breach or something that would, under a noncontract theory, entitle the plaintiff to recover, if that was the actual testimony? Your Honor, the implied covenant of good faith and fair dealing, I think that becomes a much closer call. There's sole discretion, but that discretion has to be exercised in the context of what's relevant. And the color of their ties is not relevant to the fitness of the sponsor or the property. And that just was not the case here. So the evidence was undisputed and that the character of the sponsors was reviewed and would be reviewed by the underwriters as well as the loan committee. And the record at ER 73 is the verified interrogatory response from Arbor explaining the character of the sponsors was relevant. What about, counsel, what about if Mr. Casey had testified? Yeah, you know, I read the title report dated whatever it was, March 31st. But, you know, I just decided, I read it on March 31st, but I decided I'd let this go for another month just to let it go, even though I knew I wasn't going to fund when I read it. And we just let them know early May because that's the way I wanted to do business. Would that be okay? Would that have been okay? I think that also may implicate the implied covenant. But that wasn't the case here because all that was revealed by the prelim was a modification of a deed of trust that required additional due diligence by the underwriters. Mr. Casey testified. I'm sorry. I don't think I understand that. So I'm looking at the title report, and it said an agreement to modify the terms and provisions of the deed of trust. So how does that not by itself reveal to the lender that this was a workout event? That did disclose that there was a workout event, but Mr. Casey testified, it wasn't just the modification of that deed of trust. The borrower had two opportunities to disclose the workout event, and they failed to do that. Right, but those were both. I mean, but both of those opportunities were before the title report was furnished around March 31st, right? No, Your Honor. Exhibit A to the application was the first indication where there was a check the box and it said no. But the second one was the May 3rd Form 6460 from Steve Donia. That was provided for the first time on May 5th. It was dated May 3rd, provided May 5th. It's at SER 181 through 186. That's the package of the Form 6460s, and it was once again on the form required by Fannie Mae, where it asks for foreclosures or workout events or bankruptcies within the last 10 years. That was where we had Mr. Donia also say no. Then there was the additional issue of the trustee for the original key principal, the attorney. It was discovered that there was a bankruptcy, despite that the application certification and the Form 6460 did not disclose a bankruptcy. And, Your Honor, so it wasn't just one thing, and Mr. Casey was clear about that. It was the fact that there were misrepresentations through the duration of the process, and ultimately the nail on the coffin was Mr. Donia's Form 6460, where he also failed to disclose the workout. And that was what the deal killer was, as was explained by Mr. Casey. Now, there was a lot of evidence that was not included in the initial record, and we actually supplemented the record to make sure the court has a complete picture. The party stipulated to have the district court determine this dispute, but it wasn't based on just a few e-mails, as was disclosed by... Counsel, I may have missed it, and if so, I apologize. But is there anything in the district court's findings of fact about a failure to disclose a bankruptcy? I don't believe it's in the findings of fact that that was disclosed. The district court focused on the disclosure of the workout, not the bankruptcy, because she just cites to the two instances. But the 6460 form, where it was determined the deal was dead, if you go to SER 164, that was in the record to the district court. The bankruptcy was also in the record. Counsel, I'm confused on why this particular argument is being made. The case was tried to the district court. It doesn't matter that it was tried on the papers, because the party stipulated to that. The district court made findings of fact. I would think that we would not start with the evidence. We'd start with the findings of fact, and if they were not challenged as clearly erroneous in any respect, we would also end with the findings of fact. Those are the facts upon which we decide the case. Am I missing something there? You're asking us to retry the case, I think, based on these various pieces of evidence that you're discussing, and I don't understand why. Your Honor, I was responding to Judge Bennett's question, and the findings of fact do describe the multiple misrepresentations during the course of the loan processing. We don't know for sure what was relied upon by the district court. It was all in the record. But certainly, the form permitted work. If there were a challenge, a clearly erroneous challenge, then it would matter. What did he rely on, and was there enough for him to make that finding? But it doesn't. It goes to the waiver argument that's being argued on appeal, Your Honor, and Judge Bennett's question regarding whether or not May was the operative date of the information coming to light to the underwriters. And it wasn't just one disclosure. It was multiple disclosures that were misrepresentations. Did the district court find as a fact that there were multiple events that could have colored this decision, but it didn't tell what all those events were? It used the plural? Is that right? Multiple misrepresentations? I believe the actual word was during the course of the process, the loan process. And I don't have the exact language, but that was the – it was during the course of the process, I believe. Or something to that effect was the precise language. Your Honor, in order for the court to determine that there was an obligation to fund, and that's really what it boils down to is, let's say 2006 says there was an obligation to fund. There would have to be a waiver of the obligation to go to the loan committee, and a willful decision to circumvent the obligation to get a loan commitment letter and to send it to the loan committee, and that just did not happen here. There was no waiver of the express terms of the contract. The contract is a loan application. The preamble says there must be lender's loan committee approval. There's no guarantee of approval without requesting – without approval of the requested loan or subsequent issuance of a commitment with the discretion of that loan committee still outstanding, and no loan commitment having been provided. There's still no obligation to fund, and there's certainly no damages. But you've conceded already that the bank could not be fully arbitrary. It could not say, as Judge Bennett said, we don't like the color of the borrower's ties, and so we're not going to fund. So, I mean, if they can't exclude those reasons, then there must be other reasons that are sufficient, and that's the question. Are your reasons sufficient? Yeah. The only reason was the misrepresentations, and when you have undisputed evidence that it is criteria that is acceptable for determining whether or not a loan can be approved, and Judge Dorsey put in the findings of fact it was appropriate to consider a misrepresentation, well, then we can't assume an obligation to fund. And this was not an arbitrary basis for declining the loan. This is a Fannie Mae delegated underwriting and loan application where there are risk shares between the federal agency Fannie Mae and Arbor. There's risk share there, and there's a duty to Fannie Mae. And so it was the character of the sponsor was material. And if we go to the actual application, the cancellation of the application, Section 20 provides that the Arbor may cease the processing of the application. Page 3 at the bottom, it says, if for any reason Arbor elects not to issue a commitment, and to your Honor's question, it says for any reason Arbor could not issue the commitment. But not red ties, right? Not red ties, not completely arbitrary. Exactly, and that just wasn't the case here. I have another question for you. Do you read Casey's testimony as saying that had he known at the time that he generated this mistrust toward the applicant, had he known about the title report in March, he would have trusted the applicant? Do you read his testimony that way? That is, at the time of his deposition, he was acknowledging that he didn't know all the facts, and if he'd known all the facts, he would have trusted this applicant. I think seeing it a different way, he certainly said the workout by itself was not a deal killer, and it was the failure to represent the fact of the workout that was controlling for him. I'm just wondering if he backed off in his deposition testimony that in fact there was a failure to disclose. Certainly the contemporaneous emails that were considered by the court, the district court, and his testimony are consistent. That was all it was, was this failure of disclosure, the character of the sponsor. And, Your Honor, that was not an arbitrary reason. When you have a certification required in the application, a certification, then it can't be arbitrary. And New York law, which is very similar to Nevada law, quite frankly, it says no obligation can be implied that would be inconsistent with the express terms of the contract. When you're certifying a fact, that's part of the contract. And when Arbor has an obligation to process the application, but not to fund without loan committee approval or a commitment letter, it does not require that they only look at objective criteria like loan to value ratios and property criteria in determining whether or not to fund. You can't impose new terms. And there is nothing in the record where Arbor said, if we take this to committee, it will fund. That did not happen. And the communications that are part of the record are finite. They are boxed in. They are written. Why don't you conclude your argument, counsel? Thank you, Your Honor. In conclusion, this court should deny the appeal. There's no basis for awarding fees that are conditional, or fees damages that are conditional on funding, not only funding, but funding by May 8th. All right, thank you, counsel. You have two minutes, counsel. Very quickly, and I appreciate a couple more minutes because I have to address these factual issues that really shouldn't be. There was a bank, one of the guarantors did have a bankruptcy. He didn't misrepresent that. It was found out. Mr. Casey said, okay, we're going to have to replace him. If you look at Mr. Casey's May 3rd correspondence, he says, okay, if Mr. Donia and this other gentleman step in as the personal guarantors, and these are only bad boy carve outs, by the way. You can only look for the property. We're fine. We'll fund the loan. We did that on May 3rd. Mr. Casey specifically tested the sole and only reason he didn't let this go to loan committee, and that's also in the testimony that I've cited, was, and the district courts found this, was the workout. The workout was disclosed back in March. Mr. Casey said, yes, if I had known about that, it wouldn't have concerned me, and I would have done this. Specifically, this is Mr. Smith's report to the committee. He was the underwriter. That's my question. Yes. It was generally positive. Yes. And if it was favorable, his report, you would have issued the loan. Fair enough. Right. There's no question of fact that they would have issued this loan if he had just looked at the loan modification thing, that it was arbitrary and capricious. The district court found that. The district court found that their canceling of the loan application process was arbitrary and capricious and wrongful. The only question for this court is, is there an obligation to fund if the borrower met all the criteria and they weren't arbitrary and capricious? And the court hit it dead on the nail. You can't just say, you know what? I made a mistake. I didn't realize that this was a loan modification from 2009. If I had just investigated this loan modification from 2009, I wouldn't have had a concern with it. And the second supposed nondisclosure, which didn't even come up and wasn't part of all this stuff, but had to do with the new guarantor coming on again who had no knowledge of anything, but it's the same issue, the loan modification. And it's not even clear on that form. Did one of your entities have the loan modification? Thank you, counsel. I think we have your argument. The case just argued will be submitted.
judges: KLEINFELD, BENNETT, Cogan